**Joseph P. McNULTY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (McNULTY TOOL & DIE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 22, 2002.

Decided Aug. 14, 2002.

Joseph P. McNulty, petitioner, pro se.

Diane M. Ingbritsen, Center Valley, for respondent.

BEFORE: FRIEDMAN, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Joseph McNulty (Claimant) appeals from a decision of the Worker's Compensation Appeals Board (Board) reversing the Worker's Compensation Judge's (WCJ) order granting McNulty's petition to review medical treatment filed against McNulty Tool & Die Company (Tool & Die).

On February 8, 1992, Claimant suffered a work-related injury to his left shoulder as a result of an electric shock. On Febru-

ary 27, 1992, Tool & Die accepted liability by issuing a Notice of Compensation Payable (NCP), which the described injury as a "dislocated left shoulder," and began payment of total disability benefits to Claimant at the weekly rate of $197.09. On March 31, 1992, Claimant signed a final receipt stipulating that he returned to work on March 23, 1992 without a loss of earning due to his work-related injury.

After his return to work, Claimant underwent surgery for his injury on April 27, 1993. On May 5, 1993 the parties executed a supplemental agreement stipulating that Claimant's disability returned as of April 28, 1993; his surgery was followed by physical therapy until October 1993. On October 22, 1993, the parties executed another supplemental agreement (Final Agreement) stipulating that Claimant was able to return to work at wages equal to or exceeding his pre-injury wage as of June 14, 1993 and suspended his compensation benefits as of that date. The Final Agreement further provided that Tool & Die would continue to pay all related and necessary medical expenses for Claimant's work-related injury.

On July 9, 1994, Claimant's left shoulder again became dislocated while demonstrating the use of a "reach pole" in an aquatics rescue class he was conducting. At the time, Claimant was aquatics director for Valley Forge Council Boy Scouts of America (Valley Forge). At the request of the nurse for Valley Forge, Claimant sought medical treatment at a local hospital. Following this incident, his shoulder began dislocating approximately every one to two months.

On or about May 30, 1996, Claimant was working at Eisenhower Middle School for Norristown Area School District (Norristown) when a sixth grade student attacked him. As a result, his shoulder again dislocated. He immediately sought treatment and subsequently received physical therapy at Suburban General Hospital. His initial emergency room visit and medical bills for physical therapy were paid by Norristown.

On August 28, 1997, Claimant filed a petition to review medical treatment and a reinstatement petition against Tool & Die, Valley Forge, and Norristown. Valley Forge and Norristown filed answers denying the material allegations that Claimant's shoulder dislocated while in their employ. A hearing before a Worker's Compensation Judge (WCJ) was held.

On December 30, 1999, the WCJ granted Claimant's petition to review medical treatment against Tool & Die, but denied the petitions against Valley Forge and Norristown. The WCJ also denied Claimant's reinstatement petition. The WCJ concluded that Claimant met his burden of proving that his February 8, 1992 injury recurred on or about July 9, 1994 and May 30, 1996. The WCJ further concluded that Claimant did not meet his burden of proving that he had a loss of earning power resulting from these recurrences of his work-related injury. The WCJ determined that Tool & Die unreasonably denied payment of reasonable and necessary medical services for Claimant's work injury and its recurrences and, thus, assessed a penalty against Tool & Die of fifty-percent (50%) of Claimant's unpaid medical expenses payable directly to him. Tool & Die appealed this decision to the Board.

In its order dated August 2, 2001, the Board reversed the WCJ, concluding that it was not supported by substantial, competent evidence. The Board ruled that the credible testimony of Claimant

alone was not sufficient to determine whether his shoulder dislocations on July 9, 1994 and May 30, 1996 were recurrences or aggravations of his 1992 work-related injury. The Board ruled that Claimant was required to present medical testimony to resolve that issue. As Claimant presented no medical testimony, the Board determined that he failed to meet his burden of proof and reversed the WCJ's decision. Claimant now seeks judicial review of the Board's adjudication.[1]

■■ If an incident materially contributes to a previous work-related injury, a new injury, or aggravation, has occurred. Therefore, the employer at the time of the aggravation is liable for the payment of a claimant's compensation benefits. *C.P. Martin Ford, Inc. v. Workers' Compensation Appeal Board (Resad Dzubur & Norristown Ford)*, 767 A.2d 1164, 1166–67 (Pa. Cmwlth.2001). However, if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident, which does not contribute materially to the disability, then the claimant has suffered a recurrence and the employer at the time of the initial injury is responsible for the payment of benefits. *Id.* If the sequence of events is not sufficient to establish whether a claimant has suffered an aggravation or a recurrence, unequivocal medical testimony is essential. *Reliable Foods, Inc. v. Workmen's Compensation Appeal Board (Horrocks)*, 660 A.2d 162, 166 (Pa.Cmwlth. 1995); *Zinc Corp. of America v. Workmen's Compensation Appeal Board (Byers)*, 145 Pa.Cmwlth. 221, 603 A.2d 218, 226 (1992).

Here, the Board ruled that the WCJ's opinion was not supported by substantial evidence because it was, "not obvious, based upon the credible testimony of Claimant alone, whether his shoulder dislocations on July 9, 1994 and May 30, 1996 were recurrences or aggravations of his work injury, because the dislocations on those dates were preceded by events which may have caused either recurrences or aggravations of his work injury." The Board was correct that medical evidence was needed but erred in placing this burden on Claimant. Claimant's testimony was sufficient to demonstrate recurrence; it was the responsibility of Tool & Die to present medical evidence that Claimant suffered an aggravation thus making compensation the responsibility of another employee.

■■ The WCJ relied on the credible testimony of Claimant as well as medical records to find that Claimant continued to suffer from shoulder dislocations.[2] A claimant is not required to produce medi-

1. Our review in unemployment compensation cases is limited to determining whether constitutional rights were violated, whether errors of law were committed or whether findings of fact are supported by substantial evidence. *Sheets v. Unemployment Compensation Bd. of Review*, 708 A.2d 884 (Pa. Cmwlth.1998).

2. It is well established that the WCJ, as fact finder, has exclusive province over questions of credibility and evidentiary weight, and the WCJ's findings will not be disturbed when they are supported by substantial evidence.

*Northeastern Hospital v. Workmen's Compensation Appeal Board (Turiano)*, 134 Pa. Cmwlth. 164, 578 A.2d 83 (1990). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mrs. Smith's Frozen Foods Co. v. Workmen's Compensation Appeal Board (Clouser)*, 114 Pa.Cmwlth. 382, 539 A.2d 11 (1988). The WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth. 461, 593 A.2d 921 (1991), *petition for allow-*

cal evidence to establish continuing disability where, as here, benefits have been suspended, not terminated. *Trumbull v. Workmen's Compensation Appeal Board (Helen Mining Co.)*, 683 A.2d 342, 345 (Pa.Cmwlth.1996); *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 227, 642 A.2d 1083, 1085 (1994). Even if a period of time has passed, the continuation of the injury is acknowledged by the fact that benefits have been merely suspended, and the employer has not moved to terminate its liability for their payment. *Latta*, 537 Pa. at 227 n. 4, 642 A.2d at 1085 n. 4.

■ Even where a reinstatement petition has been filed following a suspension, the burden is on the employer, in the nature of an affirmative defense, to demonstrate that the disability is, in fact, attributable to a new injury for which a different employer might be liable. *York City School District v. Workmen's Compensation Appeal Board (Peyser)*, 136 Pa. Cmwlth. 110, 582 A.2d 423, 425 (1990); *See also Latta*, 537 Pa. at 227 n. 4, 642 A.2d at 1085 n. 4. *Zinc Corporation of America*, 603 A.2d at 220–21. This is because a presumptive partial disability exists whenever there is an agreement to suspend compensation. *York City School District*, 582 A.2d at 424–25.[3] While Claimant's shoulder dislocations could be aggravations, and not recurrences, it was Tool & Die's burden to prove this point once Claimant established by his own testimony that his injury continued. Thus, it was Tool & Die, not Claimant, that was required to present unequivocal medical tes-

timony on this issue. *Reliable Foods*, 660 A.2d at 166.

Because Tool & Die did not prove that Claimant suffered from a new injury, it was required to pay his medical bills pursuant to the Final Agreement; its failure to do so violated the Workers Compensation Act. The WCJ correctly ruled that Tool & Die's insurance carrier did not have a reasonable basis for denying payment of Claimant's medical bills. Thus, the order requiring Tool & Die to pay a 50% penalty directly to Claimant was justified.

Accordingly, the decision of the Board is reversed.

**ORDER**

AND NOW, this 14th day of August, 2002, the order of the Workers' Compensation Appeal Board dated August 2, 2001, in the above-captioned matter is hereby reversed.

---

*ance of appeal denied* 529 Pa. 626, 600 A.2d 541 (1991).

**3.** Tool & Die contends that our holding in *Reliable Foods* places the burden of proof upon Claimant to prove that his injury was either recurring or an aggravation. We disagree. Contrary to the circumstances of this

case, the claimant in *Reliable Foods* sought reinstatement of his benefits following a termination by way of a final receipt. *Id.* at 164 n. 1. Therefore, the claimant in that case did not benefit from the presumption that his injury continued.